**CHATEAU COMMUNITIES, INC., Appellant,**

v.

**Peggy A. MILLER, Appellee.**

No. 00–71793.
Bankruptcy No. 99–51215.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 28, 2000.

Thomas Budzynski, Clinton Township, MI, for Appellant.

Kenneth Schneider, Detroit, MI, for Appellee.

## Opinion and Order

FEIKENS, District Judge.

### I. Introduction

Chateau Communities, Inc. ("Chateau") appeals a decision of the bankruptcy court that held Chateau in contempt of court. The bankruptcy court held Chateau in contempt for attempting to collect a debt from appellee-Peggy A. Miller ("Miller" or "the debtor") that was discharged under the Bankruptcy Code. Chateau contends that the debt arose after Miller's filing for bankruptcy and, thus, was not subject to discharge.

### II. Factual Background

Miller filed a petition for chapter 7 bankruptcy on July 14, 1999. She listed a secured debt to Greentree Financial for a mortgage on her mobile home, a mortgage which exceeded the value of the home. She also listed a debt to Chateau for rent on the lot where her mobile home sat. On her statement of intentions, she indicated her intent to surrender the mobile home.

On July 30, 1999, the parties stipulated to relief from the automatic stay for Chateau to pursue state court remedies.

On October 25, 1999, the bankruptcy court entered an order of discharge. That same day, Chateau asked Miller to pay $1,242.80, the amount owing for rent and lot charges from the date of the bankruptcy petition, July 14, through October 22, 1999, the date Greentree Financial foreclosed on the home. During that time, Miller did not live in her mobile home but the mobile home sat on Chateau's lot. Miller's attorney responded by stating such amount was discharged. On November 5, 1999, Chateau filed a motion in state court for money damages and obtained judgment on this claim on December 8.

On December 20, 1999, the bankruptcy case was closed.

In bankruptcy court, Miller filed a contempt motion against Chateau arguing that Chateau's collection request violated

the automatic stay and that subsequent acts to collect violated the discharge injunction. The court held that Chateau's actions violated the discharge injunction but not the automatic stay and assessed $3,989.98 in costs and fees against Chateau.

## III. Legal Background and the Bankruptcy Court's Opinion

Section 365(a) of Title 11 allows a bankruptcy trustee to assume or reject any unexpired lease or executory contract of the debtor. This section provides:

> [In a chapter 7 case] if the trustee does not assume or reject... an executory contract or an unexpired lease of residential real property... of the debtor within 60 days after the order for relief... such... contract or lease is deemed rejected.

11 U.S.C. § 365(d)(1). The judge in bankruptcy court, Stephen Rhodes, held that this section applied to Miller's month-to-month tenancy and that, since, the trustee did not assume or reject Miller's lease, it was deemed rejected effective September 12, 1999, sixty days after Miller filed her petition.

Section 365(g)(1) (all section references are to Title 11 of the U.S.Code) provides that the rejection of a lease constitutes a breach of contract. Section 502(g) provides that any such rejection is deemed to have arisen the date of the filing of the petition.

> The purpose of section 365(g) is to make clear that, under the doctrine of relation back, the other party to a contract [here Chateau].. is simply a general unsecured creditor. The effect of the breach is to permit the creditor to seek allowance of its claim under § 502.

3 Collier on Bankruptcy ¶ 365.09[1] at 365–72. Because Miller had no assets, Chateau did not file a claim under § 502. Instead, it sought collection directly from her.

Judge Rhodes held that Chateau's claim was discharged under § 727(b) which provides:

> [A] discharge... discharges the debtor from all debts that arose before the date of the order for relief under this chapter and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 502 of this title.

11 U.S.C. § 727(b).

Because he held the debt discharged, Judge Rhodes held that Chateau's collection attempts violated § 524(a)(2), which provides that the discharge of a debt "operates as an injunction against the commencement of an action... or an act, to collect [or] recover such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). To give effect to this section, Judge Rhodes assessed costs and attorney's fees.

## IV. Appellant's Arguments

### A. Rent Arose Post–Petition

■ The appellant argues that the debt on the lease arose post-petition and, since discharge does not apply to post-petition debts, the debt was not discharged and the contempt finding was in error.

These obligations arose from debtor's month-to-month tenancy. Under § 365(d)(1), the lease was deemed rejected. Under § 502(g), this rejection was deemed a breach of contract pre-petition so that the lessee, Chateau, became an unsecured creditor.

Chateau's argument that monies owed on the lease were post-petition debts directly contradicts the bankruptcy code which deems such debts pre-petition by the operation of § 502 and § 365. Although the debts arose after the filing of bankruptcy, § 502(g) of the bankruptcy code deems such debts pre-petition debts.

Chateau argues that *In re Lozada,* 214 B.R. 558 (Bkrtcy.E.D.Va.1997) is applicable. In that case, a bankruptcy court held that association dues on a residence arose post-petition and thus were not discharged by the discharge order. In the instant case, the Bankruptcy Court properly distinguished *In re Lozada.* The instant case involves § 365 whereas that section went undiscussed in *In re Lozada.*

### B. Abandonment

■ Chateau also argues that the rent was collectible in spite of discharge because of the abandonment provision of the bankruptcy code, § 554. At the closing of the case, Chateau argues, the mobile home was abandoned to the debtor as if the debtor had owned it all along. Chateau reasons that if the debtor owned the mobile home all along, then, she is responsible for the rent of the lot during the pendency of her bankruptcy case.

When property of the estate is a burden to the estate, a trustee may abandon it. § 554(a). The mobile home was a burden to Miller's estate because her mortgage was greater than the value of the mobile home. Because the trustee in this case did not abandon the mobile home outright, the mobile home was abandoned to the debtor at the time of closing of the case. § 554(c).

Chateau's abandonment argument fails because the debt it seeks to recover arise from the lease contract not the ownership of the mobile home. Ownership of the mobile home does not affect the status of the lease and does not affect the discharge of the rents owed on that lease.

Further, Chateau was found in contempt of the discharge provision for its motion in state court on November 5, 1999, for which judgment was taken on December 8. These actions took place before the closing of the case, i.e. before the time abandonment to the debtor took place. Thus, the abandonment argument cannot help Chateau because it filed in state court against Miller before the mobile home was abandoned to her.

### C. The Status of the Lease

In its brief, Chateau asserts contradictory positions regarding the debtor's lease, a month-to-month tenancy of indefinite term. Not surprisingly, Chateau is only half-right. But, even half-right is not enough. Chateau argues correctly that, although rejected by operation of bankruptcy law, the lease did not terminate. Chateau argues incorrectly that the lease, being a month-to-month tenancy, ended every 30 days and a new one was created every thirty days.

■ The rejection of the lease under § 365(d)(1) is not a termination, *see In re Austin Development Co. (Eastover Bank for Savings v. Sowashee Venture )* 19 F.3d 1077, 1083 (5th Cir.1994), thus, the debtor's lease continued until termination by either party. Rejection of debtor's lease under § 365(d)(1) constituted a breach of the lease. Any claim arising from this breach is deemed to have arisen pre-petition. § 502(g). Thus, Chateau is entitled to damages for that breach, even damages arising after the rejection of the lease, but those damages are considered a pre-petition claim.

■ Chateau also argues that since it was a month-to-month tenancy a new contract arose between Miller and Chateau every 30 days. Thus, according to Chateau, the rent on the first new 30–day contract entered into post-petition was post-petition debt and not dischargeable. But, the Miller's month-to-month tenancy was not a series of new 30–day contracts, but, was instead one continuing tenancy. *Cf. Rice v. Atkinson–Deacon–Elliott Co.,* 215 Mich. 371, 375, 183 N.W. 762 (1921). Thus, contrary to Chateau's assertion, the debtor did not enter into any new contracts to rent the lot after she filed for bankruptcy.

### V. Violation of the Stay

■ At oral argument, Chateau argued that it should not be subject to contempt

sanctions because the parties stipulated to lifting the bankruptcy stay thereby allowing it to proceed "to pursue State court remedies, including issuance of an Order of Eviction...." Judge Rhodes found that Chateau violated the discharge statute, not the automatic stay. Judge Rhodes explicitly rejected the argument that Chateau violated the bankruptcy stay: "the actions of Chateau occurred after the discharge was entered, the stay was no longer in effect." *In re Miller,* 247 B.R. 224, 228 n. 1 (citing 11 U.S.C. § 362(c)(2)(C)). The stipulation allowed Chateau to pursue an eviction action and even a judgment for money damages, however, it did not provide immunity from the effects of any future discharge of debts. Further, since the stay expired upon discharge, on October 25, 1999, any safe harbor provided by the stipulation to suspend the stay no longer existed upon discharge.

## VI. Conclusion

Because Chateau's attempt to collect rents owed violated the statutory discharge of Miller's debts, I AFFIRM the bankruptcy court's decision.

IT IS SO ORDERED