**In re Peggy A. MILLER, Debtor.**

**No. 99–51215–R.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

March 24, 2000.

Kenneth Schneider, Detroit, Michigan, for debtor.

Thomas Budzynski, Clinton Township, Michigan, for Chateau.

## Opinion

STEVEN W. RHODES, Bankruptcy Judge.

The debtor, Peggy Miller, filed this motion for contempt against Chateau Communities, Inc. for violation of the automatic stay and the discharge injunction. Chateau filed an objection. The dispute arises from Chateau's attempt to collect on its postpetition lot rent claim against Miller. The Court concludes that because the lot lease was deemed rejected under 11 U.S.C. § 365(d)(1), Chateau's postpetition claim is treated as a prepetition claim under 11 U.S.C. §§ 365(g) and 502(g) and that prepetition claim was discharged under 11 U.S.C. § 727(b). Accordingly, the Court concludes that Chateau did violate the discharge injunction of 11 U.S.C. § 524(a).

## I.

Miller filed her chapter 7 petition on July 14, 1999. On Schedule D, she listed a secured debt to Greentree Financial for a mortgage on a mobile home. On Schedule F, Miller listed a debt to Chateau for rent for the mobile home lot where her mobile home was located. On her statement of intentions, she indicated her intent to surrender the mobile home.

On August 16, 1999, Miller and Chateau stipulated to relief from the automatic stay to allow Chateau to pursue its state court remedies, including issuance of an order of eviction from the lot. Chateau, however, did not take action to evict Miller from the lot. On August 25, 1999, the trustee filed a no asset report. On October 25, 1999, the discharge was entered.

In a letter dated October 25, 1999, coincidentally the same day as the discharge, Chateau requested payment from Miller of $1,242.80, which represented the amount owing for rent and miscellaneous charges on the lot from the date of the bankruptcy petition through October 22, 1999. On November 5, 1999, Chateau filed a motion for entry of money damages in state court. On December 8, 1999, Chateau obtained a judgment on this claim. Throughout this time period, Miller's attorney wrote to Chateau advising it of Miller's discharge and asking it to cease its collection activities.

## II.

Miller contends that Chateau violated the automatic stay by its October 25, 1999 letter requesting damages. Miller asserts that all of the subsequent acts by Chateau to collect the debt violated the discharge injunction. Miller argues that although Chateau asserts that the debt is for postpetition rent on the lot, she did not enter into any postpetition agreement with Chateau, and all of the charges requested by Chateau are based on a prepetition agreement. Miller further contends that she received no postpetition benefit from Chateau. She contends that she surrendered the property and moved out of the mobile home prior to filing her bankruptcy petition. Miller asserts that her attorney signed and returned the lift stay order on

July 30, 1999, permitting Chateau to take possession of the lot. Miller contends that the failure of Greentree to take responsibility for the mobile home until almost November, 1999 was not attributable to any actions on her part. Miller argues that Greentree benefitted from the storage of the mobile home on the lot from and after the date of the bankruptcy. Therefore, she argues that Greentree should be liable for the postpetition lot rent.

Chateau contends that the automatic stay and the discharge do not apply because the debt arose postpetition. Chateau also asserts that even if the lease was deemed rejected pursuant to § 365(d)(1), rejection does not operate to terminate the lease.

### III.

Under 11 U.S.C. § 365(a), the trustee may assume or reject any unexpired lease of the debtor. Section 365(d)(1) provides:

In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

11 U.S.C. § 365(d)(1).

■ Because there was no written lease between Chateau and Miller, Miller was a month-to-month tenant. *Aspen Enters., Ltd. v. Bray,* 148 Mich.App. 9, 14, 384 N.W.2d 65 (1985). "[I]t is irrelevant for purposes of section 365(d) that the debtor did not have a written lease or that it rented on a month-to-month basis. Pursuant to section 365(m) 'any rental agreement to use real property' constitutes a lease of real property for purposes of section 365." *In re United West, Inc.,* 87 B.R. 138, 140 (Bankr.D.Nev.1988). Accordingly, § 365(d)(1) is applicable.

The trustee did not move to assume or reject Miller's lease with Chateau. Therefore, it was deemed rejected September 12, 1999, sixty days after the petition was filed.

■ Pursuant to § 365(g)(1), the rejection is treated as a breach of the lease that took place immediately prior to the filing of the bankruptcy petition. *See In re Lavigne,* 114 F.3d 379, 387 (2d Cir.1997). As explained in Collier on Bankruptcy:

The purpose of section 365(g) is to make clear that, under the doctrine of relation back, the other party to a contract that has not been assumed is simply a general unsecured creditor. The effect of the breach is to permit the creditor to seek allowance of its claim under § 502. This is confirmed by the definition of the term "creditor" in section 101 which provides that the term includes any entity that has a claim of the type specified in section 502(g). Thus, the effect of a rejection is that a breach is deemed to exist which in the ordinary case will give rise to a claim for damages.

3 Collier on Bankruptcy, ¶ 365.09[1] at 365–72 (Lawrence P. King ed., 15th ed., 1999).

Because this was a no asset case, Chateau did not file a proof of claim. Instead, it sought to recover directly from Miller for what Chateau deemed to be her postpetition occupancy of the mobile home site. On October 25, 1999, Chateau sent a letter to Miller requesting payment for the lot usage from the date of the petition through October 22, 1999, the date the mobile home was repossessed by Greentree. On the same day Chateau sent its payment request to Miller, the Court entered Miller's discharge.

Section 727(b) provides in pertinent part:

[A] discharge ... discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this

title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 502 of this title.

11 U.S.C. § 727(b).

The Court concludes that this language plainly provides for the discharge of Chateau's claim, both prepetition and postpetition.

Chateau relies on *Old Bridge Estates Community Ass'n., Inc. v. Lozada (In re Lozada)*, 214 B.R. 558 (Bankr.E.D.Va. 1997), *aff'd*, 176 F.3d 475 (4th Cir.1999), for its contention that the debt it seeks to collect arose postpetition and was therefore not discharged. In *Lozada*, the debtors filed for chapter 7 relief in August of 1995. They moved out of their home in October of 1995, with the expectation that the lender would foreclose. The lender however did not foreclose until August of 1996. The homeowners association then sought to recover dues and late fees from the debtors for the period of October 1995 through August 1996. The debtors argued that the dues and fees were discharged. The court however held that the discharge did not apply because the dues and fees arose postpetition.

Although the *Lozada* case does bear some similarity to the case before the Court, it is distinguishable in one very important respect. Because the obligations at issue apparently did not involve an unexpired lease or executory contract, the court did not consider § 365(d) or (g). Rather, the court relied on *River Place East Housing Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833 (4th Cir.1994). There, the debtor owned an interest in a cooperative association. The cooperative was governed by a declaration which included a covenant running with the land requiring owners to pay association dues as they were assessed. The debtor filed for chapter 7 relief, vacated the property and signed a consent order lifting the automatic stay. The creditor, however, did not foreclose. Following the debtor's dis-

charge, the cooperative association sought payment of postpetition association dues. The debtor argued that the dues had been discharged. The court concluded that because the right to payment did not arise until postpetition, the debtor's liability for the assessments was not discharged. The court reasoned, "Under the Declaration, the obligation to pay the assessments is a function of owning the land with which the covenant runs. Thus, Rosenfeld's obligation to pay the assessments arose from his continued postpetition ownership of the property and not from a pre-petition contractual obligation." 23 F.3d at 837. Thus in *Rosenfeld*, as in *Lozada*, there was no indication that § 365 applied.

The Court concludes that *Maupin v. Franklin Equity Leasing Co. (In re Maupin)*, 165 B.R. 864 (Bankr.M.D.Tenn.1994) and *In re Tall*, 79 B.R. 291, 293–94 (Bankr. S.D.Ohio 1987) are more analogous to the present case. In *Maupin*, the debtor filed for chapter 7 relief and indicated her intent to reject an automobile lease and to surrender the vehicle. The lessor filed a motion for relief from the automatic stay, which was granted. However, the lessor did not take possession of the vehicle until nearly four months later. The lessor then sought to collect from the debtor for her postpetition use of the vehicle. The court held that under § 365(d)(1), the lease was automatically rejected sixty days after the petition was filed. Pursuant to § 365(g), the rejection constituted a breach of the lease. Under § 502(g), the lessor's claim for damages from the rejection and resulting breach was an allowed prepetition claim under § 502(a) and (b). Finally, pursuant to § 727(b), the lessor's claim was discharged, and its attempt to collect the debt violated the discharge injunction. *Maupin*, 165 B.R. at 865–67.

Similarly, in *In re Tall*, the debtors owned property located in a development known as Hide–A–Way Hills. Ownership of the property carried with it membership in the Hide–A–Way Club, which maintained common areas in exchange for

monthly fees. Following the debtors' chapter 7 filing, the trustee abandoned the property and it was subsequently sold through a foreclosure sale. Upon confirmation of the sale, the debtors' membership in the club terminated. The club however continued to bill the debtors for the monthly assessments from the time of the bankruptcy filing until the confirmation of the sale of the property.

In determining the effect of the debtors' discharge on the postpetition fees assessed by the Club, the court first determined that the agreement between the debtors and the Club was an executory contract and thus governed by § 365. Because the trustee did not assume or reject the executory contract within sixty days of the date the petition was filed, it was deemed rejected by operation of law under the provisions of § 365(d)(1). The automatic rejection gave the club the right to assert a claim for damages, which, under § 502(g), would have been treated as a prepetition claim for purposes of allowance and distribution. The club did not assert any such claim and it was discharged under § 727(b). The court held that the club's actions to collect the fees from the debtors violated the discharge injunction of § 524(a). *Tall,* 79 B.R. at 292–94.

### IV.

■ Chateau's attempts to collect a discharged debt violated § 524(a)(2), which provides that the discharge of a debt "operates as an injunction against the commencement or continuation of an action ... or an act, to collect [or] recover such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).[1] The purpose of the permanent injunction is to effectuate one of the primary purposes of the Bankruptcy Code: to afford the debtor a financial "fresh start." *Green v. Welsh,* 956 F.2d 30, 33 (2d Cir.1992).

1. Miller also argued that Chateau violated the automatic stay. However, because the actions of Chateau occurred after the discharge

■ Miller has requested reimbursement for her legal fees incurred as a result of Chateau's violation of the discharge injunction. Unlike § 362(h), which authorizes the recovery of actual damages, attorney fees, and punitive damages, § 524 does not expressly authorize any relief other than injunctive relief. However, "the modern trend is for courts to award actual damages for violations of § 524 based on the inherent contempt power of the court." *Hardy v. U.S. (In re Hardy),* 97 F.3d 1384, 1389 (11th Cir.1996) (citations omitted). This Court agrees that a debtor who is injured by a willful violation of the discharge injunction is entitled to damages, including reasonable attorney fees. Otherwise the discharge injunction would be essentially without meaning or effect.

Miller has not provided the Court with any detail or documentation of her legal expenses. She will therefore have an opportunity to do so and Chateau will have an opportunity to respond. A hearing will be scheduled if necessary.

An appropriate order will be entered.

was entered, the stay was no longer in effect. *See* 11 U.S.C. § 362(c)(2)(C).