indicated an intention to abandon the mobile home. Upon filing her petition for relief, the plaintiff's assets, including the mobile home, became property of the estate. 11 U.S.C. § 541. Therefore, defendant could not properly look to the plaintiff for any obligations associated with the mobile home as it was no longer the plaintiff's. On October 22, 1999, Greentree Financial foreclosed on the mobile home. Therefore, defendant's attempt to utilize 11 U.S.C. § 544(c), which provides that property remaining in the estate at the close of the case reverts back to the debtor must fail: The property in question was no longer in the bankruptcy estate at the close of plaintiff's case.

For the reasons explained above, we **affirm**.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0085P (6th Cir.)
File Name: 02a0085p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re: PEGGY A. MILLER,
            *Debtor.*

———————————

PEGGY A. MILLER,
            *Plaintiff-Appellee,*

v.

CHATEAU COMMUNITIES, INC.,
            *Defendant-Appellant.*

No. 00-2077

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-71793—John Feikens, District Judge.

Argued: November 1, 2001

Decided and Filed: March 11, 2002

Before: KEITH, NORRIS, and MOORE, Circuit Judges.

---

**COUNSEL**

---

**ARGUED:** Thomas J. Budzynski, Clinton, Michigan, for Appellant. Kenneth M. Schneider, SCHNEIDER, MILLER & LIM, Detroit, Michigan, for Appellee. **ON BRIEF:** Thomas J. Budzynski, Clinton, Michigan, for Appellant. Kenneth M. Schneider, SCHNEIDER, MILLER & LIM, Detroit, Michigan, for Appellee.

---

**OPINION**

---

ALAN E. NORRIS, Circuit Judge. This appeal involves a dispute over whether plaintiff Peggy A. Miller, a former tenant of defendant Chateau Communities, Inc., owed rent for the continued presence of her mobile home on defendant's property after she abandoned the home and filed for bankruptcy. Defendant sought to recover post-petition lot rent in state court. Plaintiff responded by seeking an order from the bankruptcy court finding defendant in contempt. The bankruptcy court concluded that defendant had violated the discharge injunction of 11 U.S.C. § 524(a) and sanctioned defendant. The district court affirmed.

We affirm the opinions of the bankruptcy court, *In re Miller*, 247 B.R. 224 (Bankr. E.D. Mich. 2000), and of the district court, *Chateau Communities v. Miller*, 252 B.R. 121 (E.D. Mich. 2000).

The district court summarized the case in these terms:

Miller filed a petition for chapter 7 bankruptcy on July 14, 1999. She listed a secured debt to Greentree Financial for a mortgage on her mobile home, a mortgage which exceeded the value of the home. She also listed a debt to Chateau for rent on the lot where her mobile

the rejection of the lease, but those damages are considered a pre-petition claim.

Chateau also argues that since it was a month-to-month tenancy a new contract arose between Miller and Chateau every 30 days. Thus, according to Chateau, the rent on the first new 30-day contract entered into post-petition was post-petition debt and not dischargeable. But, the Miller's month-to-month tenancy was not a series of new 30-day contracts, but, was instead one continuing tenancy. *Cf. Rice v. Atkinson, Deacon, & Elliott Co.*, 215 Mich. 371, 375 (1921). Thus, contrary to Chateau's assertion, the debtor did not enter into any new contracts to rent the lot after she filed for bankruptcy.

*Chateau Communities, Inc. v. Miller*, 252 B.R. at 124.

Defendant presents the alternative argument that plaintiff was responsible for post-petition rent on the property despite discharge of her pre-petition debts because, under 11 U.S.C. § 554,[1] the property was abandoned to plaintiff after discharge.

This argument fails, however, because at no point during the post-petition period in question was the defendant obligated for rents related to the mobile home. The bankruptcy court correctly determined and, the district court agreed, that plaintiff did not incur any new post-petition liability for the lease after she rejected it. She did not use and occupy the lot subsequent to the rejection of the lease with defendant that occurred on September 12, 1999. In fact, plaintiff vacated the premises prior to filing for her petition for relief with the bankruptcy court on July 14, 1999 and

---

[1]11 U.S.C. § 554 provides in relevant part:

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

The Court concludes that this language plainly provides for the discharge of Chateau's claim, both prepetition and postpetition.

*In re Miller*, 247 B.R. at 226-27. Accordingly, the situation that results from a breach of a lease due to rejection of it under § 365 is that the lessor becomes an unsecured creditor with a pre-petition claim for damages.

Defendant argues that the bankruptcy code makes a distinction between rejection under § 365 and termination of the lease, and therefore even if the lease was rejected under § 365, there was never an effective termination of plaintiff's month-to-month tenancy. Defendant contends that this resulted in the renewal of plaintiff's tenancy throughout the post-petition period giving rise to a post-petition claim for rent that was not discharged.

Defendant's argument misconstrues the effect of rejection under § 365 on plaintiff's lease. The district court correctly explained that, although defendant is correct that there is a distinction between rejection and termination of a lease under the Bankruptcy Code, this does not mean that plaintiff's lease was renewed in this case:

Chateau argues correctly that, although rejected by operation of bankruptcy law, the lease did not terminate. Chateau argues incorrectly that the lease, being a month-to-month tenancy, ended every 30 days and a new one was created every 30 days.

The rejection of the lease under § 365(d)(1) is not a termination, *see In re Austin Development Co. (Eastover Bank for Savings v. Sowashee Venture)* 19 F.3d 1077, 1083 (5th Cir. 1994), thus, the debtor's lease continued until termination by either party. Rejection of debtor's lease under § 365(d)(1) constituted a breach of the lease. Any claim arising from this breach is deemed to have arisen pre-petition. § 502(g). Thus, Chateau is entitled to damages for that breach, even damages arising after

home sat. On her statement of intentions, she indicated her intent to surrender the mobile home.

On July 30, 1999, the parties stipulated to relief from the automatic stay for Chateau to pursue state court remedies [including issuance of an order of eviction].

On October 25, 1999, the bankruptcy court entered an order of discharge. That same day, Chateau asked Miller to pay $1,242.80, the amount owing for rent and lot charges from the date of the bankruptcy petition, July 14, through October 22, 1999, the date Greentree Financial foreclosed on the home. During that time, Miller did not live in her mobile home but the mobile home sat on Chateau's lot. Miller's attorney responded by stating such amount was discharged. On November 5, 1999, Chateau filed a motion in state court for money damages and obtained judgment on this claim on December 8.

On December 20, 1999, the bankruptcy case was closed.

In bankruptcy court, Miller filed a contempt motion against Chateau arguing that Chateau's collection request violated the automatic stay and that subsequent acts to collect violated the discharge injunction. The court held that Chateau's actions violated the discharge injunction but not the automatic stay and assessed $3,989.98 in costs and fees against Chateau.

*Chateau Communities, Inc. v. Miller*, 252 B.R. at 122-23.

The dispute in this case concerns the effect of plaintiff's bankruptcy filing upon her month-to-month tenancy with defendant. The resolution of this dispute centers on two related questions: (1) whether plaintiff's tenancy was renewed post-petition; and (2) the effect of the automatic rejection provision of 11 U.S.C. § 365. Plaintiff argues that any debt related to her tenancy arose pre-petition because she never entered into any post-petition agreement with defendant. Defendant responds that plaintiff's month-to-month tenancy

was effectively renewed post-petition because she failed to remove her trailer home from the property. In the alternative, defendant argues that, under 11 U.S.C. § 554, plaintiff's discharge effectively abandoned the property to plaintiff, thereby making her liable for rental payments until the lease was terminated.

We agree with the conclusions of both the bankruptcy and district courts that there was no renewal of plaintiff's tenancy in the post-petition period, and that, under §365, any debt owed is deemed pre-petition and was discharged. Furthermore, we agree with the district court's analysis that plaintiff's discharge did not render her liable for post-petition rental payments under 11 U.S.C. § 554.

Under 11 U.S.C. § 365(a), a trustee in a bankruptcy case may assume or reject any unexpired lease of the debtor. Section 365(d)(1) provides as follows:

> In a case under Chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

11 U.S.C. § 365(d)(1). The bankruptcy judge correctly analyzed the effect of section 365 in this case:

> The trustee did not move to assume or reject Miller's lease with Chateau. Therefore, it was deemed rejected September 12, 1999, sixty days after the petition was filed.

> Pursuant to § 365(g)(1), the rejection is treated as a breach of the lease that took place immediately prior to the filing of the bankruptcy petition. *See In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997). As explained in Collier on Bankruptcy:

> The purpose of section 365(g) is to make clear that, under the doctrine of relation back, the other party to a contract that has not been assumed is simply a general unsecured creditor. The effect of the breach is to permit the creditor to seek allowance of its claim under § 502. This is affirmed by the definition of the term "creditor" in section 101 which provides that the term includes any entity that has a claim of the type specified in section 502(g). Thus, the effect of a rejection is that a breach is deemed to exist which in the ordinary case will give rise to a claim for damages.

> 3 Collier on Bankruptcy, ¶ 365.09[1] at 365-72 (Lawrence P. King ed., 15th ed., 1999).

*In re Miller*, 247 B.R. at 226. Therefore, the result of the automatic rejection under § 365(d)(1) was to create a breach of the lease on the part of the plaintiff. Although that breach in fact occurred after the 60 day period for acceptance or rejection elapsed, § 365(g)(1) specifically provides that the rejection is treated as a breach that took place immediately prior to the filing of the bankruptcy petition. 11 U.S.C. § 365(g)(1). As the bankruptcy court correctly explained, this created a pre-petition debt on the part of the plaintiff that was discharged under 11 U.S.C. § 727(b):

> Section 727(b) provides in pertinent part:

> > [A] discharge . . . discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 502 of this title.

> 11 U.S.C. § 727(b).