*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name:  10b0011n.06**

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | |
|---|---|
| In re: JOSEPH MOSER<br><br>        and<br><br>In re: DEVON GROVE-MERRITT<br> n/k/a DEVON DULLAGHAN,<br><br>                Debtors.<br>_____<br><br><br>CHRISTO LASSITER,<br><br>                Appellant,<br><br>        v.<br><br>JOSEPH MOSER and<br> DEVON GROVE-MERRITT<br> n/k/a DEVON DULLAGHAN,<br><br>                Appellees.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 09-8067, consolidated with<br> No. 09-8068 |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio
Case Nos. 05-38518 and 07-31887

Decided and Filed:  November 23, 2010

Before:  FULTON, RHODES, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

---

**COUNSEL**

**ON BRIEF:** Christo Lassiter, Cincinnati, Ohio, for Appellant. Joseph H. Moser, Mason, Ohio, Devon L. Dullaghan, Mason, Ohio, for Appellees.

---

**OPINION**

---

STEVEN W. RHODES, Bankruptcy Appellate Panel Judge. Christo Lassiter ("Lassiter") appeals an order of the bankruptcy court finding him in contempt and imposing sanctions against him for violating the discharge injunctions of two chapter 7 debtors. For the reasons stated below, the bankruptcy court's order is affirmed.

## I. ISSUES ON APPEAL

1. Whether the bankruptcy court erred in finding that Lassiter violated the debtors' discharge injunctions.

2. Whether the bankruptcy court abused its discretion in imposing sanctions and awarding damages to the debtors.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). The bankruptcy court's finding of contempt and imposition of sanctions is a final order. *B-Line, LLC v. Wingerter (In re Wingerter)*, 394 B.R. 859, 862 (B.A.P. 6th Cir. 2008), *rev'd on other grounds*, 594 F.3d 931 (6th Cir. 2010).

The court's findings of fact, including the amount of damages awarded as sanctions, are reviewed under the clearly erroneous standard. *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944 (6th Cir. 2007); *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 679 (B.A.P. 6th Cir. 1999). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504 (1985)).

The bankruptcy court's legal conclusions, including whether Lassiter's state court lawsuit is barred by the discharge injunction, are reviewed de novo. *Gen. Elec. Credit Equities, Inc. v. Brice Rd. Develops., LLC (In re Brice Rd. Develops., LLC)*, 392 B.R. 274 (B.A.P. 6th Cir. 2008); *Hassanally v. Republic Bank (In re Hassanally)*, 208 B.R. 46, 48 (B.A.P. 9th Cir. 1996). "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (citations omitted).

The bankruptcy court's imposition of sanctions is reviewed for an abuse of discretion. *B-Line, LLC v. Wingerter (In re Wingerter)*, 594 F.3d 931, 936 (6th Cir. 2010); *In re Sharon*, 234 B.R. at 679. An abuse of discretion is established when the reviewing court is left with a definite and firm conviction that the court below committed a clear error of judgment. *Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726, 739 (6th Cir. 2008). "'An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.'" *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008) (quoting *Volvo Commercial Fin. LLC the Americas v. Gasel Transp. Lines, Inc.* (*In re Gasel Transp. Lines, Inc.*), 326 B.R. 683, 685 (B.A.P. 6th Cir. 2005)). In determining whether an abuse of discretion has occurred, we ask "'whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.'" *Id.* (quoting *Mayor and City Council of Baltimore, Md. v. West Virginia* (*In re Eagle-Picher Indus., Inc.*), 285 F.3d 522, 529 (6th Cir. 2002).

### III. CHRONOLOGY[1]

The debtors in these consolidated appeals, Joseph Moser ("Moser") and Devon Grove-Merritt n/k/a Devon Dullaghan ("Dullaghan"), were once married. During their marriage, Moser was a Petty Officer in the U.S. Navy. Also during the marriage, Dullaghan attended and graduated the University of Cincinnati College of Law. At some point, Moser filed a complaint with the Board of Corrections of Naval Records ("BCNR") for reasons that are unclear. While attending law school, Dullaghan attempted to handle Moser's BCNR complaint. In 2003, however, Dullaghan approached one of her law school professors, Christo Lassiter ("Lassiter"), and asked him to handle Moser's BCNR complaint. Lassiter agreed and formally took over the representation of Moser before the BCNR. At some point during Lassiter's representation of Moser, Lassiter and Dullaghan began a romantic relationship.

After graduating law school in 2003, Dullaghan began a part-time law practice out of her home. In that capacity, she represented Lassiter in a personal injury claim. According to Lassiter's allegations, Moser worked as Dullaghan's paralegal giving him access to client files, including Lassiter's. In December, 2003, Dullaghan considered divorce from Moser and, according to Lassiter, ceased employing Moser as her paralegal. Moser and Dullaghan separated in February, 2004, and Dullaghan filed for divorce. During the time that Moser worked as Dullaghan's paralegal, and after, the romantic relationship between Lassiter and Dullaghan continued and they exchanged numerous romantic emails.[2]

On April 26, 2004, the BCNR denied Moser's request for relief. On May 5, 2004, Lassiter wrote to Moser advising him that he was withdrawing as Moser's lawyer, and that Moser would need to seek the assistance of another lawyer if he wished to pursue the case further. On May 12, 2004, Lassiter wrote to Moser on behalf of Dullaghan advising that she was seeking a divorce, presenting

---

[1]The procedural facts in this case are not in dispute. The Panel has summarized the operative facts from various procedural points in the litigious history of this proceeding and the prior proceedings between the parties.

[2] The romantic relationship between Dullaghan and Lassiter ended, apparently quite badly, in the summer of 2006.

what she wished the terms of the divorce to be, and offering to draft a divorce agreement for the parties. The divorce became final in September, 2005.

At some point, in an apparent attempt to seek justice for Lassiter's "misconduct as his attorney and [for] engaging in an adulterous relationship with his client's wife [Dullaghan]" Moser contacted the Office of Disciplinary Counsel of the Supreme Court of Ohio, the University of Cincinnati College of Law, and other agencies. It appears, although it is not entirely clear, that Moser sent copies of the romantic email exchanges between Lassiter and Dullaghan, in addition to other documents, to these agencies in an attempt to have Lassiter disbarred and fired from the University of Cincinnati. On March 15, 2005, in response to Moser's actions, Lassiter and Dullaghan filed a lawsuit against Moser in the Warren County Common Pleas Court ("2005 lawsuit"). The 2005 lawsuit alleged that Moser, while working as Dullaghan's paralegal, stole correspondence, electronic mail and other documents regarding Lassiter from Dullaghan's office and published them to various persons and agencies. The suit included counts for violation of a temporary restraining order, conversion, unwarranted invasion of privacy, breach of fiduciary duty and theft. The suit sought monetary damages, return of documents, and an order prohibiting future use of the documents.

On August 22, 2005, Moser filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Lassiter was listed as a creditor in that petition. As a result of the bankruptcy filing, the 2005 lawsuit was stayed. While Lassiter did not further pursue the case, it is unclear whether the 2005 lawsuit was formally dismissed. Moser received his discharge on January 21, 2006.

On January 22, 2007, Lassiter again filed suit in state court ("2007 lawsuit").[3] The 2007 lawsuit again alleged the theft of documents from Dullaghan's office by Moser "including, but not limited to the period February 2004 through March 2004" and resulting conversion, invasion of privacy, breach of fiduciary duty, and theft. The suit also asserted that since his discharge from bankruptcy, Moser had filed a complaint with the Office of Disciplinary Counsel for the Supreme Court of Ohio on November 14, 2006, that included stolen documents. Finally, Lassiter again prayed for monetary damages in addition to injunctive relief.

_____

[3] Dullaghan was not a plaintiff in this suit.

On March 3, 2007, Dullaghan filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. There were two adversary proceedings in Dullaghan's bankruptcy case to which Lassiter was a party. In Adv. Case No. 07-3215, Lassiter brought an adversary proceeding against Dullaghan which sought to deny dischargeability of a debt allegedly owed to him by Dullaghan pursuant to § 523(a)(6). Lassiter alleged that Dullaghan willfully and maliciously injured him by damaging real property that Lassiter owned in which Dullaghan and her children had resided. The bankruptcy court ultimately found that any debt that may be owed to Lassiter by Dullaghan was dischargeable. Additionally, the Chapter 7 Trustee brought Adv. Case No. 08-3068 against Lassiter in which the trustee sought to recover and avoid two conveyances of Dullaghan's interests in the same real property, which Dullaghan made through quitclaim deeds from herself to Lassiter. The trustee prevailed on one of the claims and was entitled to avoid one of the two conveyances; as a result, the trustee in the Dullaghan case was entitled to recover $11,070.09 from Lassiter. Ultimately, Dullaghan received her discharge on September 7, 2008.

On December 9, 2008, in response to motions filed by Moser, Lassiter's 2007 lawsuit was dismissed by the state court on the grounds of improper service. On December 22, 2008, Lassiter filed a third suit in state court against Moser ("2008 lawsuit"). In this suit, Lassiter repeated the allegations made in the 2005 and 2007 lawsuits, specifically that Moser unlawfully removed personal and professional documents, letters, and romantic email exchanges from Lassiter's file held in Dullaghan's office and, without consent, publicized them to various parties including the University of Cincinnati, and the Office of Disciplinary Counsel. Lassiter alleged that this conduct constitutes conversion of his physical and intellectual property, invasion of privacy, theft, and breach of fiduciary duty Moser owed him as a paralegal in Dullaghan's office. In addition to the repeat allegations against Moser, Lassiter named Dullaghan as a defendant alleging that she aided and abetted Moser in stealing and publicizing documents from Lassiter's attorney-client file. He also alleged that Dullaghan and Moser conspired to violate the fiduciary duty owed by an attorney to a client. Lassiter prayed that the court declare that the documents taken from his attorney-client file are his personal property, that the documents be returned to him, that the court prohibit Dullaghan and Moser from future use of the documents, and for monetary damages for theft of the documents, attorney's fees and costs.

On March 23, 2009, Moser filed a motion with the bankruptcy court seeking a finding that Lassiter is in contempt of court for violating the permanent discharge injunction under 11 U.S.C. § 524, and seeking compensatory and punitive damages. Dullaghan filed a similar motion in her bankruptcy case.

Dullaghan and Moser jointly filed a motion to dismiss the 2008 lawsuit on several grounds, including that it violated the automatic stay and discharge injunctions issued by the bankruptcy court in their respective bankruptcy cases. The state court converted the motion to dismiss to a motion for summary judgment, and Lassiter filed a reply in opposition in which he detailed post-bankruptcy petition conduct of the parties upon which he asserts the 2008 lawsuit was based, and asserted that the facts described regarding acts in 2004 were provided only as background. In other words, he asserted that the 2008 lawsuit was not in violation of the discharge injunction because it sought damages only for acts which took place post-discharge.

On June 19, 2009, the state court dismissed the 2008 lawsuit, without prejudice, finding that "Lassiter's claims are enjoined by virtue of the discharge injunction provision in § 362(c)(2), Title 11, U.S. Code. To the extent Lassiter claims he is entitled to declaratory or injunctive relief, he may request the bankruptcy court to grant him relief from the discharge injunction before he can proceed further in this Court." (S.D. Ohio Bankr. Ct. Docket #86, Case No. 07-31887.) The state court reasoned that all of the claims asserted by Lassiter arose out of the alleged taking of his attorney-client file from Dullaghan's office in 2004 before either Moser or Dullaghan filed their petitions for relief under the Bankruptcy Code.

On June 23, 2009, the bankruptcy court held a hearing regarding the contempt motions filed against Lassiter at which the parties agreed to submit to mediation. Mediation was attempted, unsuccessfully, on August 12, 2009. The mediator filed a report evidencing same on August 14, 2009.

On September 23, 2009, the bankruptcy court held a day long joint hearing on the contempt motions filed by Moser and Dullaghan. Dullaghan, Lassiter, and Moser testified at the hearing. Dullaghan and Lassiter both proceeded *pro se*. Moser, who had been proceeding *pro se*, was represented by counsel at the hearing. On October 23, 2009, the bankruptcy court issued a lengthy and thorough telephonic oral opinion, written order, and judgment in both Moser's and Dullaghan's

bankruptcy cases. In its opinion, the bankruptcy court found that Lassiter violated both Moser's and Dullaghan's discharge injunctions provided by 11 U.S.C. § 524 by virtue of the 2008 lawsuit. The court found that the 2008 lawsuit violated the injunctions because it attempted to collect on pre-petition debts by seeking monetary damages for pre-petition acts, specifically, the alleged taking of Lassiter's attorney-client file from Dullaghan's office in 2004.[4] The court then issued sanctions against Lassiter in the amount of $5,137.50 in favor of Moser ($4,950 in attorney fees, $100 for travel costs, parking and postage, and $87.50 for copies), and $229.72 in favor of Dullaghan ($116.00 for copies, $72.72 for travel, $9.00 for parking, and $32.00 for postage).

Lassiter's timely appeal of the bankruptcy court's judgments and orders followed.

## IV.   DISCUSSION

After a chapter 7 debtor meets his obligations under the Bankruptcy Code, he is discharged from all debts that arose prior to the filing of his bankruptcy case. *See* 11 U.S.C. § 727(b). The bankruptcy discharge operates as an injunction to prevent any person or entity from commencing or continuing an act to collect a discharged debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2). "The purpose of the permanent injunction is to effectuate one of the primary purposes of the Bankruptcy Code: to afford the debtor a financial 'fresh start.'" *In re Miller*, 247 B.R. 224, 228 (Bankr. E.D. Mich. 2000) (citing *Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992)); *aff'd*, 282 F.3d 874 (6th Cir. 2002). The injunction is intended to preclude virtually all actions to collect, including post-discharge lawsuits. *In re Lafferty*, 229 B.R. 707, 712-13 (Bankr. N.D. Ohio 1998).

While there is no private right of action for violation of this injunction, a debtor may bring civil contempt charges against a party he alleges has violated the injunction, and if contempt is established, he may be awarded damages as a sanction for that contempt. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421-23 (6th Cir. 2000) (debtor's avenue of recourse for violation of injunction is to bring action against creditor for contempt); *Chambers v. GreenPoint Credit (In re*

---

[4] The bankruptcy court also found that the 2007 lawsuit violated Moser's discharge injunction because it sought monetary damages for pre-petition actions, in addition to the post-discharge actions referenced. Because Moser did not introduce any evidence of damages specific to the 2007 lawsuit, however, and the suit was dismissed by the state court before he was served, the bankruptcy court did not award any damages as a result of the 2007 lawsuit.

*Chambers)*, 324 B.R. 326, 329 (Bankr. N.D. Ohio 2005). "The modern trend in civil contempt proceedings is for courts to award actual damages for violations of § 524's discharge injunction, and, where necessary to effectuate the purposes of the discharge injunction, a debtor may be entitled to reasonable attorney fees." *Miles v. Clarke (In re Miles)*, 357 B.R. 446, 450 (Bankr. W.D. Ky. 2006) (citations omitted); *In re Miller*, 247 B.R. at 228 ("This Court agrees that a debtor who is injured by a willful violation of the discharge injunction is entitled to damages, including reasonable attorney fees. Otherwise the discharge injunction would be essentially without meaning or effect."); *see also Hardy v. U.S. (In re Hardy)*, 97 F.3d 1384, 1389 (11th Cir. 1996) ("modern trend is for courts to award actual damages for violations of § 524 based on the inherent contempt power of the court.").

A.      *The Filing of the 2008 Lawsuit Violated the Discharge Injunction*

Lassiter's primary argument in support of his position that the 2008 lawsuit did not violate the discharge injunctions of Moser and Dullaghan is that the lawsuit was confined to allegations regarding post-petition conduct. He does not dispute that on its face the lawsuit addresses pre-petition conduct. Rather, as he did before the bankruptcy court, he asserts that he effectively amended the complaint to limit it to post-petition conduct by virtue of his reply in opposition to Moser's and Dullaghan's motion to dismiss the 2008 lawsuit. In that reply in opposition, Lassiter detailed certain post-petition conduct and asserted that the details of conduct which took place in 2004 in the complaint were provided only as background. He argues that the bankruptcy court "elevated form over substance in the extreme by declining to recognize that [Lassiter's] Reply in Opposition to Defendant's (sic) Motion for Summary Judgment . . . is the functional equivalent of an amended pleading under Ohio Civ. R. 15 or in the alternative voluntary dismissal under Ohio Civ. R. 41." (Appellant's Br. at 21, Case No. 09-8068.)

Both the state court in which the 2008 lawsuit was pending, and the bankruptcy court have rejected this argument, as do we. The state court concluded that all of Lassiter's claims arose out of the alleged taking of his attorney-client file from Dullaghan's office in 2004, before either Moser or Dullaghan filed their petitions for relief under the Bankruptcy Code despite Lassiter's attempt to confine his claims to post-petition conduct through his reply in opposition to the motion for summary judgment. As such, the court concluded that the claims violated the discharge injunction. In similarly rejecting Lassiter's argument, the bankruptcy court stated:

Mr. Lassiter also relies on his response to the debtors' motion to dismiss in the state court, construed by the state court as a motion for summary judgment, as amending his complaint and clarifying that he was only pursuing post-petition conduct. The Court rejects this argument. The response simply is an after the fact explanation of a complaint which was, on its face, in violation of the debtors' discharges. Further, such a response is not an equivalent to an amendment of a complaint. Mr. Lassiter never took any steps to amend his complaint which only referred to one specific post-petition act and included various pre-petition dates and events. The mistake is not merely technical or inadvertent but a willful act of ignoring the basic injunctive nature of Section 524. As a lawyer Mr. Lassiter knew he could have amended his complaint to mitigate any damages that might arise by contempt of the discharge order but did not. The 2008 complaint is, on its face, a willful violation of the debtors' discharges. Any vagueness in the complaint, which Mr. Lassiter referenced, must be construed against Mr. Lassiter who filed the complaint. Furthermore, even if the response to the motion to dismiss or motion for summary judgment amended the complaint, it still does not negate the violation of the discharge injunctions arising out of the filing of the original complaint in the first place. It would only serve to possibly mitigate the debtors' damages suffered as a result of the violations.

(S.D. Ohio Bankr. Ct. Docket #74, Case No. 05-38518 at 28-29.)

We agree with the bankruptcy court and find, therefore, that it did not err in finding that the 2008 lawsuit violated the debtors' discharge injunctions. Ohio Rules of Civil Procedure 15 and 41 to which Lassiter refers do not provide for the "functional equivalent of an amended pleading." Rather, Rule 15 governs the timing of *formal* amendments to pleadings. *See* Ohio Civ. R. 15 (2010). Lassiter did not formally amend his complaint which seeks monetary damages for pre-petition acts. Rule 41 permits voluntary dismissal of all claims by a plaintiff by either notice of dismissal or stipulation of dismissal signed by all parties. *See* Ohio Civ. R. 41 (2010). Lassiter did not file a notice of dismissal of his pre-petition claims, and Rule 41 does not provide for dismissal of claims by virtue of a "reply in opposition." In addition, Lassiter's reply in opposition is itself replete with references to pre-petition conduct, specifically the alleged theft of documents from his file in 2004. (S.D. Ohio Bankr. Ct. Docket #79, Ex. 2, Case No. 07-31887 at 12, 15, and 18.)

In his briefs submitted to this Panel, Lassiter makes numerous references to testimony of Moser and Dullaghan regarding alleged post-petition acts which he asserts are not protected by the

discharge injunction. Moser and Dullaghan did in fact testify at the hearing to the faxing, mailing, and emailing of some documents, particularly "romantic emails," after they each respectively filed their petitions for relief. However, their testimony does not negate the following salient points: (1) the 2008 lawsuit included allegations regarding pre-petition conduct and sought monetary damages for that conduct; (2) Lassiter did not formally amend that complaint; (3) Lassiter's claims arose out of the alleged taking of his attorney-client file from Dullaghan's office in 2004 prior to the filing of the debtors' bankruptcy petitions; and (4) Lassiter's reply in opposition to the motions of Dullaghan and Moser in state court, upon which he relies as evidence that he was seeking damages for post-petition conduct only, is itself replete with references to pre-petition conduct.

The repeated attempts of Lassiter to file suit for and pursue his claims regarding the alleged pre-petition theft of documents and subsequent publication of those documents is the type of action which is prohibited by the discharge injunction. As stated by the court in *In re Borowski*:

> "[A]ny civil court action that is intended to further the collection of a pre-petition debt, or whose legal or practical result will be to accomplish such collection, is enjoined. This is so regardless of how the action is styled in terms of substance, and regardless of its posture as to procedure; regardless of the nominal alignment of the initiating and the responding parties; and regardless of the specificity or vagueness of the relief requested in the pleadings or papers that commence the proceeding."

216 B.R. 922, 924 (Bankr. E.D. Mich. 1998) (quoting *In re Atkins*, 176 B.R. 998 (Bankr. D. Minn. 1994)).

B.      *The Imposition of Sanctions Was Not An Abuse of Discretion*

Having concluded that Lassiter violated the discharge injunctions of Moser and Dullaghan, the bankruptcy court imposed sanctions against Lassiter, and awarded damages to Moser and Dullaghan for travel, parking, postage and copying costs, and attorney fees to Moser only. Lassiter does not contest these damages with the exception of the award to Moser for attorney fees. The bankruptcy court awarded Moser $4,950 in attorney fees based upon Moser's testimony that he believed his attorney's rate is $225 per hour and that his bill for the day long hearing would be $6,700. The court found both the rate of $225 per hour, and twenty-two hours of time representing Moser in the matter, reasonable.

Lassiter does not quibble over the amount of attorney fees awarded, rather he asserts that no attorney fees should have been awarded because he alleges that at mediation, he advised Moser that he would "no (sic) proceed on his complaint ever no matter what." (Appellant's Br. at 28, BAP Case No. 09-8067.) He argues, therefore, that the hearing was unnecessary and no attorney fees should have been incurred or awarded. In support of his position, he cites to *Harris v. Memorial Hospital (In re Harris)*, 374 B.R. 611 (Bankr. N.D. Ohio 2007). In *Harris*, a chapter 7 debtor sought attorney fees for a creditor's violation of the automatic stay. The creditor had continued to send past due statements requesting payment from the debtor after she filed for relief. While refusing to admit a violation of the stay, the creditor wrote to the debtor's counsel offering to settle the matter for $250. The settlement offer was refused and the matter of the stay violation went forward. The bankruptcy court limited the debtor's award of attorney fees to those fees which were incurred before the settlement offer was made. Because Moser proceeded *pro se* until after the failed mediation, Lassiter asserts that, following *Harris*, attorney fees should be limited to pre-hearing. In other words, no attorney fees should have been awarded.

Lassiter's reliance on *Harris* is misguided. In *Harris*, the bankruptcy court limited the award of attorney fees to the debtor to those fees which were incurred before the creditor's settlement offer of $250. There is no evidence in the record before us as to what Lassiter's settlement offer was, if it was reasonable, or if it was simply theoretical. At the hearing, the parties testified regarding Lassiter's statement that he would no longer pursue his claims, however, the testimony is unclear as to exactly what transpired. Importantly, there was no testimony regarding what, if any, settlement Lassiter actually proposed at the mediation.

In response to this same argument, the bankruptcy court stated:

> [T]he court agrees that Bankruptcy Code . . . Section 524 violation hearings are not an excuse to run up attorney fees, particularly when an issue is easily resolved. *See Harris* cited by Mr. Lassiter in his post-hearing brief. The Court further agrees with the case law that such hearings are not to be a cottage industry of litigation. However, the Court notes Mr. Lassiter continued to pursue this litigation in the state court on three separate occasions, even when it was clear his filings needed to be more precise after the bankruptcies were filed and discharges issued. Considering the contentious history of all the parties involved and Mr. Lassiter's decision to not dismiss or amend his 2008 complaint and his prosecution of that complaint until the

state court dismissed that action in June of this year finding that it involved pre-petition conduct, it is not surprising that these matters led to litigation. In any event, Mr. Moser was entitled to counsel on this matter and to be reimbursed for his reasonable attorney fees incurred in prosecuting this matter. Nor is it a sufficient defense to these attorney fees for Mr. Lassiter to have asserted at the hearing on September 23rd or as he alleged at the hearing at the mediation conference between the parties that he was not going to pursue the subject of the 2005, 2007, and 2008 law suits any longer. The parties have a tremendous history of pursuing each other in various tribunals on various charges and Mr. Lassiter never dismissed the 2008 law suit. It remained pending until June 2009 when it was dismissed by the court, not by Mr. Lassiter, with this occurring after Mr. Moser and Ms. Dullaghan had already filed contempt motions with this court. Mr. Moser was entitled to a ruling from this Court that the 2008 action and its subject matter violated his discharge injunction and the attorney fee award both compensates Mr. Moser for his needing to pursue this matter and to sanction Mr. Lassiter and deter any such future conduct that might violate Mr. Moser's discharge. As recognized . . . in *Miller* [247 B.R. 228 (Bankr. E.D. Mich. 2000)], which was affirmed by the district court in Detroit and by the Sixth Circuit Court of Appeals, the discharge injunction would be essentially without meaning if a debtor could not recover attorney fees incurred by a debtor as a result of a violation of the discharge injunction.

(S.D. Ohio Bankr. Ct. Docket #74, Case No. 05-38518 at 33-35.)

Once again, we agree with the bankruptcy court. Based on the history of these parties, it is likely that, absent the sanctions and award of damages, Lassiter will continue attempting to pursue his discharged pre-petition claims. Damages, including attorney fees, are an appropriate sanction for violation of the discharge injunction. *See In re Miller*, 247 B.R. at 228 (stating debtor injured by violation is entitled to attorney fees and giving debtor opportunity to provide details of legal expenses); *In re Lafferty*, 229 B.R. at 715 (awarding attorney fees to debtor for representation in contempt action for discharge injunction violation).[5] Based upon this record, we find no error of

_____

[5] Moser and Dullaghan also sought damages for emotional distress. However, even assuming damages for emotional distress are available for violation of the discharge injunction, the bankruptcy court found they had not proven such damages. They also claimed damages for lost work, but because the bankruptcy court found such damages were not adequately proven, they were also denied. In his reply brief, Moser "seeks to present testimony relating to these damages and respectfully requests that this court in its *de novo* review recognize these additional damages and issue a judgment favorable to Moser to reimburse him for his actual suffering . . . ." (Moser's Br.

judgment, and thus conclude that the bankruptcy court did not abuse its discretion in awarding Moser attorney fees.

C.     *Intellectual Property Not at Issue*

Lassiter next asserts that the bankruptcy court erred in finding a discharge injunction violation in relation to what he terms his intellectual property. He argues that his attorney-client file, from which the documents in question were allegedly stolen, are his intellectual property and that the bankruptcy court "derisively stated that it saw no intellectual property issues in this case." (Appellant's Br. at 22, BAP Case No. 09-8067.) He asserts that the discharge injunction does not apply to a debtor's assertion of a property right to the intellectual property of another.

In assigning this error, Lassiter misconstrues the bankruptcy court's opinion regarding his claim of intellectual property. The court did not state that it "saw no intellectual property issues in this case." What the court in fact stated was that it was "not concerned about Mr. Lassiter's recovering what he refers to as his intellectual property or internal client documents. What concerns the Court is Mr. Lassiter seeking monetary damages for actions or alleged torts committed pre-petition." (S.D. Ohio Bankr. Ct. Docket #74, Case No. 05-38518 at 29-30.) The bankruptcy court did not find that Lassiter's 2008 lawsuit, insofar as it sought return of the documents, violated the discharge injunction. Rather, it found only that the demand for monetary damages violated the injunction, a finding which is not in error as discussed above.

D.     *The Bankruptcy Court Did Not Deny Lassiter a Fair Trial*

Lassiter asserts that the bankruptcy court denied him a fair trial by "expressly stating that it had made a determination regarding the credibility of the parties based upon two adversary proceedings and thereby hoped to discourage additional testimony and evidence as to that issue." (Appellant's Br. at 29-30, BAP Case No. 09-8067.)

---

at 21, BAP Case No. 09-8067.) Because Moser did not file a cross-appeal, we are without jurisdiction to address this issue. *See Francis v. Clark Equip. Co.*, 993 F.2d 545, 552 (6th Cir. 1993) (stating that "the filing of a notice of cross-appeal is jurisdictional where an appellee wishes to attack part of a final judgment in order to enlarge his rights or to reduce those of his adversary.")

The bankruptcy court did indeed state that it had "significant exposure to [Lassiter and Dullaghan] testifying and sufficient opportunity to observe both [Lassiter's and Dullaghan's] credibility" by virtue of testimony in two previous adversary proceedings and "plenty of opportunity to make credibility issues and determine credibility . . . ." (S.D. Ohio Bankr. Ct. Docket #89, Case No. 05-38518, Transcript of Sept. 23, 2009, hearing at 5-6.) However, the court also explained that it would "keep an open mind" and was simply attempting to keep all parties focused on the issues at hand. Having said that, the bankruptcy court, in fact, gave the parties significant leeway with questioning aimed at impeachment and credibility issues throughout the hearing. In fact, our review of the transcript reveals that the parties spent far more time attempting to impeach one another, call one another's credibility into question, and examine documents from other pending litigation, than they did addressing the relevant facts and issues, and they did so with minimal interruption from the court.

Moreover, while Lassiter asserts that the bankruptcy court's opinion dated March 31, 2009, in the adversary proceeding in Dullaghan's bankruptcy case, No. 07-31887, *Lassiter v. Dullaghan*, Adversary Proceeding No. 07-3215, "expressly makes numerous unfavorable assessments of [Lassiter]," the bankruptcy court in fact made unfavorable assessments of *both* Lassiter *and* Dullaghan calling the "credibility of the *parties* generally questionable." (S.D. Ohio Bankr. Ct. Docket #63 at 15, Case No. 07-3215) (emphasis added.) The adversary proceeding in question was an action brought by Lassiter pursuant to 11 U.S.C. § 523(a)(6) regarding damages to a home owned by him in which Dullaghan and her children had resided.[6] The trial lasted two days and portions of the testimony in that trial were in regard to issues raised by the parties here, in particular, the extent of any attorney-client relationship between Lassiter and Dullaghan, and the alleged theft of Lassiter's file from Dullaghan's office by Moser.

Additionally, while the bankruptcy court did indeed comment at the opening of the hearing on this matter that it had previously had the opportunity to determine credibility of the parties, it also

_____

[6] It is interesting to note Lassiter's active participation in Dullaghan's chapter 7 case. He is a lawyer and a law professor who was plainly aware of § 523, as evidenced by his filing of an adversary proceeding in Dullaghan's case, yet he did not seek a nondischargeability determination with respect to his claim for reputation injury that is referenced in both of the post-discharge lawsuits that he initiated in state court. Thus, the Panel views Lassiter's filing of two post-discharge lawsuits in state court for pre-petition actions all the more egregious.

stated in its oral decision in *this* matter that in reaching its determinations, it "considered the demeanor and credibility of the witnesses who testified, specifically Devon Dullaghan, Christo Lassiter and Joseph Moser . . . ." (S.D. Ohio Bankr. Ct. Docket #74, Case No. 05-38518 at 3.)

Finally, Lassiter argues that the bankruptcy court denied him a fair trial by relying upon the testimony of Moser who "admittedly harbored historically expressed racial hostility" toward him. He bases this assertion upon the bankruptcy court's refusal to admit into evidence certain proffered exhibits that Lassiter contends demonstrate Moser's racism - a domestic violence civil protection order dated March 22, 2004, which Dullaghan filed against Moser allegedly due to Moser's racist hostility toward Lassiter, and a police complaint dated February 10, 2008, filed against Moser by Dullaghan for allegedly teaching the children to refer to Lassiter by a derogatory term for African-Americans. Seemingly as a catch all in support of his entire position that he did not violate the parties' discharge injunctions, Lassiter states that "[i]t is unconscionable to accept the testimony of [Moser], and (sic) admitted racist, as the basis for an additional attack on [Lassiter], after abusing his status as a paralegal to access [Lassiter's] attorney file and to steal and wrongfully publicize privilege (sic) documents to legal adversaries year after year to support a claim when Moser knew that [Lassiter] was not ever going to prosecute no matter what- and to suddenly bring in an attorney at the eleventh hour to generate attorney fees is unconscionable." (Appellant's Br. at 30, BAP Case No. 09-8067.)

There is no indication in the bankruptcy court's detailed and thorough oral decision on this matter that it in any way gave any particular weight to the testimony of Moser. Rather, the basis of the court's decision appears to be found primarily in the documents - in particular, the 2008 lawsuit itself and the allegations contained therein - than any of the parties' testimony. Second, the transcript of the hearing reveals that Lassiter sought to introduce these documents during cross-examination of Dullaghan while attempting to impeach Moser's earlier denial of being a racist. The bankruptcy court refused to admit the documents as evidence on the basis that their probative value was outweighed by prejudice, but allowed Lassiter to proffer the documents and question Dullaghan regarding them for impeachment purposes.

The bankruptcy court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *United States v. Phillips*, 888 F.2d 38, 40 (6th Cir. 1989). The court did not abuse its

discretion in excluding the proffered evidence. The relevance of the evidence to the issue of whether the 2008 lawsuit violated the discharge injunctions of the debtors was questionable at best. Moreover, even if arguably relevant in some manner, the court properly excluded the evidence on the basis that its probative value was outweighed by its potential prejudice. *See* Fed. R. Evid. 401, 403. In conclusion, review of the entire record before us demonstrates that the bankruptcy court conducted a fair and impartial hearing.

## V.  CONCLUSION

For the foregoing reasons, the orders of the bankruptcy court are AFFIRMED.